## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ACCEPTANCE INDEMNITY | ) | 3:21-cv-699-SVN |
| INSURANCE COMPANY | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH KRAR & ASSOCIATES, INC. | ) | July 28, 2023 |
| *Defendant.* | ) | |

### RULING AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Acceptance Indemnity Insurance Company ("Acceptance") brought the instant breach of contract action against Defendant Joseph Krar & Associates, Inc. ("Krar"), alleging that Krar incorrectly failed to include certain insurance policy exclusions in a policy it issued on behalf of Acceptance. According to Acceptance, this failure led to it being forced to pay more than one million dollars in legal fees and settlement expenses to an injured third party, that Acceptance otherwise could have avoided. Acceptance now seeks to recover those fees and costs from Krar through this breach of contract action. Presently before the Court are the parties' cross motions for summary judgment. For the reasons discussed herein, Acceptance's motion is GRANTED IN PART and Krar's motion is DENIED.

### I.     FACTUAL BACKGROUND[1]

#### A.  The Agency Agreement

Krar is a Connecticut corporation licensed by the State of Connecticut Insurance Department to issue insurance policies. Pl.'s L.R. 56(a)2 St., ECF No. 99-1, ¶ 4.  On January 5,

---

[1] The facts giving rise to this action are largely undisputed. Where a fact is undisputed, the Court cites only to the relevant Local Rule 56(a)2 statement.

2015, Acceptance and several affiliated entities entered a general agency agreement (the "Agency Agreement") with Krar.  *Id.* ¶ 5.  Pursuant to the Agency Agreement, Krar would act as an agent for Acceptance and would solicit buyers for insurance coverage that Acceptance would provide. *Id.*  Krar was provided with authority to enter binding commercial general liability insurance policies of up to one million dollars per incident, and two million dollars in the aggregate.  *Id.* ¶ 6.[2]  In return for issuing such insurance agreements, Krar would earn commissions.  Def.'s L.R. 56(a)2 St., ECF No. 103, ¶ 3.

Two provisions of the Agency Agreement are most relevant here.  First, the Agency Agreement provided that Krar was:

> authorized to receive and accept proposals for insurance; to effect, issue, countersign, and deliver such policies as may be authorized from time to time by the Company; to collect, receive and receipt for premiums thereon or therefore; to cancel or non-renew such policies in the discretion of [Krar] where such cancellation is legally permissible, all in accordance with the attached Binding Authority Schedule, the Company's manuals, rate books, regulations, and other specific instruction provided by the Company.

ECF No. 65-3 at 2.  Acceptance contends that one of the specific instructions Krar was to follow was to include certain forms with policies Krar issued on Acceptance's behalf.  Specifically, Acceptance believes that Krar was required to include forms from a "Mandatory Common Forms" list for general liability insurance policies.  ECF No. 65-4.

Second, the Agency Agreement contained the following indemnification provision, in relevant part:

> **INDEMNIFICATION**
> ***
> [Krar] agrees to indemnify and hold [Acceptance] harmless for any damages resulting directly or indirectly from any violations of any insurance law or

---

[2] The parties dispute whether this authority included only policies written in the states of Connecticut and Massachusetts, or whether it was not so limited.  *See* Pl.'s L.R. 56(a)2 St. ¶ 6.  As this issue has no bearing on the resolution of the motions for summary judgment, the Court will not address it further.

insurance department regulation, and/or breach of [Krar's] obligations, acts or omissions under this Agreement, whether intentional or not.

ECF No. 65-3 at 5.

B.  The Insurance Policy

In March of 2017, Krar was approached by Mirante Agency ("Mirante") on behalf of WR Home Builders ("WR Home"), with an inquiry about obtaining an insurance policy from Krar. Pl.'s L.R. 56(a)2 St. ¶ 9.  In response to this inquiry, Lisa Redman, an underwriter at Krar, worked with Mirante to obtain a quote for the insurance requested.  *Id.* ¶ 10.  On March 15, 2017, Redman submitted an application and other relevant information from WR Home to an underwriter at IAT Group, a company affiliated with Acceptance.  *Id.* ¶ 11.  On March 16, 2017, Redman obtained the appropriate rates from IAT Group and assembled a quote to provide Mirante for WR Home's consideration.  *Id.* ¶ 15, 16.  The quote sent to Mirante included the premium amount for the proposed policy, the liability limits of several proposed coverages in the policy, and certain other documents.  *Id.* ¶ 19.

Additionally, and crucially for this action, the quote included particular mandatory forms and endorsements.  *Id.* ¶ 20.  Specifically, the quote included a form titled "AL 16 47 11 15 - Injury to Employees, Workers, or Contractor Persons of Insureds or Contracted Organizations Exclusion" (the "Injury to Employees Exclusion").  Def.'s L.R. 56(a)2 St. ¶ 16.  It also included form "AL 14 54 10 09 – Action Over Exclusion" (the "Action Over Exclusion" and, together with the Injury to Employees Exclusion, "the Exclusions").  *Id.*  Each of these forms acted to limit the scope of coverage that Acceptance was providing.

First, the Injury to Employees Exclusion stated:

This insurance does not apply to:
**Injury to Employees, Workers Or Contracted Persons Of Insureds Or Contracted Organizations**

"Bodily injury" or "personal and advertising injury" to:
**(1)** Any person who is an "employee", "leased worker", "temporary worker" or "volunteer worker" of you or any insured arising out of and in the course of:
**(a)** Employment by you or any insured; or
**(b)** Performing duties related to the conduct of your or any insured's business;

. . .
This exclusion applies:
**(1)** Whether the insured may be liable as an employer or in any other capacity; and
**(2)** Whether the insured may have an obligation to share damages with or repay someone else who must pay damages because of the injury.

ECF No. 65-28.  Next, the Action Over Exclusion provided, in relevant part:

This insurance does not apply to:
**Employer's Liability**
"Bodily injury" to:
**(1)** An "employee" of any insured arising out of and in the course of:
**(a)** Employment by any insured; or
**(b)** Performing duties related to the conduct of any insured's business; or
**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:
**(1)** Whether any insured may be liable as an employer or in any other capacity; and
**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ECF No. 65-29.  Both of these forms were required to be included in any policy issued by Krar for

Acceptance, and it was Krar's responsibility to include such forms.  Def.'s L.R. 56(a)2 St. ¶ 17.

After receiving the initial quote, which included the Exclusions, Mirante informed Krar

that WR Home had accepted the proposed terms and requested that commercial liability insurance

consistent with the quote be bound.  Pl.'s L.R. 56(a)2 St. ¶ 21.  Krar responded by confirming the

insurance was effective for the period of March 17, 2017, through March 17, 2018.  *Id.* ¶ 22.  After

sending this confirmation, Krar went about assembling the policy that was requested and, on

March 28, 2017, delivered to Mirante a final effective policy for WR Home.  *Id.* ¶¶ 22, 24.  As

part of this policy, JNC, Inc. ("JNC"), a general contractor with whom WR Home worked, was listed as an additional insured, as required by a contract between WR Home and JNC.  Def's L.R. 56(a)2 St. ¶ 61; Pl.'s L.R. 56(a)2 St. ¶ 35.  Somewhere in the process between issuing the quote and the final policy, the Exclusions were inadvertently left out and not made part of the insurance policy that was issued.  Def.'s L.R. 56(a)2 St. ¶¶ 29, 30.

C.  The Underlying Incident and Lawsuit

On September 27, 2018, Braulio Mosquera-Maldonado ("Maldonado") filed a lawsuit in the Supreme Court of New York, County of Westchester, alleging he had been injured while working on a construction project in Harrison, New York.  Id. ¶ 32.  Specifically, Maldonado alleged that he was employed by WR Home, which was in turn hired as a subcontractor by JNC, the general contractor on the project.  Pl.'s L.R. 56(a)2 St. ¶¶ 34, 35.  While performing his duties for WR Home, Maldonado fell from a ladder and suffered serious injuries.  Id. ¶ 34.  Maldonado thereafter sued JNC, but not WR Home, in New York state court.  See ECF No. 65-11 (underlying complaint).

On March 21, 2019, JNC's insurer notified Acceptance of the Maldonado lawsuit and requested that it defend and indemnify JNC based on the terms of the subcontract between JNC and WR Home.  Def.'s L.R. 56(a)2 St. Id. ¶ 38, 39.  On April 16, 2019, Acceptance agreed to defend and indemnify JNC without reservation.  Id. ¶ 40.  Such defense and indemnification was provided to JNC "in exchange for a full waiver of all costs, fees and expenses incurred thru [sic] [April 16, 2019]."  Id. ¶ 41.  On April 22, 2019, Acceptance retained counsel to represent JNC. Id. ¶ 42.

The day after this counsel was hired, an employee of Acceptance notified Acceptance's underwriting department that there was the potential for substantial liability in the underlying

lawsuit. *Id.* ¶ 43. At this time, Acceptance began to examine the policy issued by Krar and realized that it did not contain the Exclusions. *Id.* ¶ 45. Acceptance reached out to representatives for Krar regarding this issue on April 23, 2019. *Id.* ¶ 46. Upon being contacted, Krar's representative acknowledged that the policy as issued did not include the Exclusions and asked Acceptance how it would like to proceed. *Id.* ¶¶ 47–48.

Thereafter, beginning on June 19, 2019, Acceptance repeatedly requested that Krar indemnify it for damages incurred in defending the underlying lawsuit. Def.'s L.R. 56(a)2 St. ¶ 45. Krar repeatedly refused to do so. *Id.* ¶ 46.

Almost three months later, on September 5, 2019, Acceptance informed Krar that it was terminating the Agency Agreement between them. Pl.'s L.R. 56(a)2 St. ¶ 60. Based on the termination provision of the Agency Agreement, once this notification was transmitted, the relationship between Acceptance and Krar would be terminated in its entirety no later than December 6, 2019. *Id.*

Meanwhile, the underlying litigation brought by the injured employee proceeded. The parties agree that Acceptance did not revoke or seek to reform the policy after it learned about the missing Exclusions. On February 9, 2021, Acceptance sent Krar a letter notifying it that settlement negotiations had begun in the underlying lawsuit, and asking if Krar wanted to participate in the discussions. *Id.* ¶¶ 47, 49. Krar turned down this offer and, without Krar's involvement, a settlement agreement was reached in the underlying lawsuit under which Acceptance would pay the entire one-million-dollar policy limit to Maldonado. *Id.* ¶¶ 50, 51. The same day this settlement was reached, Acceptance sent a letter to Krar's insurance carrier requesting it fully reimburse Acceptance for all costs incurred in defending and settling the underlying lawsuit, under

the terms of the Agency Agreement.  *Id.* ¶ 52.  Krar's insurance carrier refused to indemnify Acceptance, and this lawsuit for breach of contract and contractual indemnity followed.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence

that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 249.

If the non-movant fails "to make a sufficient showing on an essential element of [their] case with

respect to which [they have] the burden of proof," then the movant will be entitled to judgment as

a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

The Court applies the same standard when summary judgment is sought on the basis of an

affirmative defense.  *See Conn. Ironworkers Employers Ass'n v. New England Regional Council

of Carpenters*, 869 F.3d 92, 99 (2d Cir. 2017) (applying same standard to assess motions for

summary judgment made on the merits and on affirmative defenses).  That is, if the movant "meets

its burden by introducing evidence sufficient to establish an affirmative defense, the nonmovant

must introduce evidence to establish that a genuine dispute of material fact exists."  *Id.*  It follows

that, "where a *plaintiff's* motion for summary judgment would be meritorious absent the assertion

of an affirmative defense, in order to avoid summary judgment, *the defendant* must adduce

evidence which, viewed in the light most favorable to and drawing all reasonable inferences in

favor of [it], would permit judgment for [it] on the basis of that defense."  *Jose Luis Pelaez, Inc.

v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 127 (S.D.N.Y. 2019) (emphases

added) (internal citations omitted).

When examining the record, "the court must resolve all ambiguities and draw all inferences

in favor of the nonmoving party in order to determine how a reasonable jury would decide."

*Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992).  "[O]nly when reasonable

minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v.

Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

III.    **CHOICE OF LAW**

Before turning to the merits of this case, the Court must first establish the law applicable to this dispute.  The parties contend the law of two separate states is applicable here.  First, the parties agree the Agency Agreement between Acceptance and Krar contains a valid choice of law clause requiring application of the law of Nebraska to that contract.  Def's L.R. 56(a)2 St. ¶ 53.  As this case is brought pursuant to this Court's diversity jurisdiction, the choice of law rules of Connecticut apply.  *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013).  In Connecticut, parties are allowed to select what law will govern their contract unless: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue" and that state's law would apply in the absence of the choice of law provision.  *Elgar v. Elgar*, 679 A.2d 937, 943 (Conn. 1996).  Here, neither party argues that either of these situations are present, and in fact both parties agree that Nebraska law should apply to determine whether there was a breach of the Agency Agreement.  The Court agrees and will apply Nebraska law to interpret the Agency Agreement.

The parties further contend, however, that whether the Exclusions would in fact have prevented Acceptance from being required to defend and indemnify the underlying action should be governed by Connecticut law.  Whether the Exclusions would have prevented coverage is critical to Acceptance's breach of contract action as, without such a showing, Acceptance will be unable to demonstrate that any of its alleged damages were caused by Krar's supposed breach.  "When appropriate, Connecticut courts apply the principle of dépeçage, whereby 'different issues in a single case may be decided according to the substantive law of different states.'"  *In re*

*Helicopter Crash Near Wendle Creek, Brit. Columbia on Aug. 8, 2002*, 485 F. Supp. 2d 47, 57 (D. Conn. 2007) (quoting *Reichhold Chemicals, Inc. v. Hartford Accident & Indem. Co*., 750 A.2d 1051 (Conn. 2000)). Here, application of this principle is appropriate.

In addition to the parties' agreement that Connecticut law applies to this second issue, the Connecticut Supreme Court has recognized a rebuttable presumption that, in the case of a liability insurance contract, the law of the state where the insured risk is located applies. *Reichhold Chemicals*, 750 A.2d at 782. WR Home was a Connecticut LLC with its principal place of business in Connecticut and, notwithstanding that the underlying incident occurred in New York, most of its operations took place in Connecticut. Therefore, the Court agrees that Connecticut law is the appropriate law to apply in determining whether the Exclusions would have protected Acceptance from liability.

Thus, the Court will apply Nebraska law in evaluating whether Krar has breached the Agency Agreement. To the extent necessary to determine this question, however, the Court will apply Connecticut law to determinations related to the purportedly incorrectly issued insurance policy, including whether the Exclusions would have prevented Acceptance from being liable in the underlying litigation.

## IV.    BREACH OF CONTRACT CLAIM

In order to prove its claim for breach of contract, Acceptance must "prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Phipps v. Skyview Farms, Inc*., 610 N.W.2d 723, 730 (Neb. 2000). Acceptance has alleged Krar breached two different provisions of the Agency Agreement. First, Acceptance claims in Count One of its complaint that Krar breached the Agency Agreement by failing to include all required forms when issuing the underlying policy at issue. Second, Acceptance claims

in Count Two that, by failing to indemnify and reimburse Acceptance for the money it spent defending, and ultimately settling, the underlying litigation, Krar breached the indemnification provision of the Agency Agreement.

A.  Inclusion of Correct Forms

Turning first to Krar's failure to include the Exclusions in the policy, Krar does not contest the following assertions:  that the Exclusions were required to be included in WR Home's policy, pursuant to the Agency Agreement; that the forms were not included, as required; and that Acceptance complied with all of its obligations under the Agency Agreement.  Thus, the elements of an agreement, breach, and Acceptance's compliance with any possible conditions precedent are all satisfied.[3]  Krar instead argues that its motion for summary judgment should be granted, and Acceptance's denied, because: (1) Acceptance ratified Krar's actions by failing to take steps to invalidate the policy as soon as the mistake was discovered; and (2) the settlement paid by Acceptance was a voluntary payment such that Acceptance cannot seek to hold Krar liable for it.  Separately, only in opposition to Acceptance's motion for summary judgment, Krar argues that the Exclusions would not have prevented Acceptance from being liable even if they had been included, such that Krar's breach did not cause Acceptance any damages.

The Court holds that neither the principle of ratification nor the voluntary payment doctrine are applicable here.  Moreover, based on interpretation of the insurance contract, Acceptance would not have been liable regardless of whether the Exclusions were included in the policy.  Thus, Acceptance's motion for summary judgment must be granted.  Additionally, because Krar has not

---

[3] The parties dispute whether the damages Acceptance claims are attributable to the breach—the one million dollars Acceptance paid to settle the underlying lawsuit and the attorneys' fees it incurred in connection with that suit—were caused by Krar's breach.

proven that its affirmative defenses permit judgment in its favor, its motion for summary judgment is denied in its entirety.

### 1. Ratification

Under Nebraska law, "when an agent fails to fulfill his agency duties, the agent may be held liable to the principal for losses suffered by the principal." *Barta v. Kindschuh*, 518 N.W.2d 98, 100 (Neb. 1994). Where, however, "the principal authorized the agent's acts, or otherwise acquiesced in or ratified such acts, the agent will not be held liable to the principal for the losses resulting from those acts." *Barta*, 518 N.W.2d at 100.

Ratification is "the acceptance of a previously unauthorized contract." *Brook Valley Ltd. P'ship v. Mutual Bank of Omaha*, 825 N.W.2d 779, 789 (Neb. 2013). Ratification can only take place once the ratifying party has "actual knowledge, not merely constructive knowledge, of the previously unauthorized act." *Elting v. Elting*, 849 N.W.2d 444, 455 (Neb. 2014). Once such knowledge is obtained, "ratification of an agent's unauthorized acts may be made by overt action or inferred from silence and inaction," as long as the ratifying party: (1) has manifested "assent that the unauthorized act shall affect the [the ratifying party's] legal relations," or (2) has acted in a manner "that justifies a reasonable assumption that [the ratifying party] so consents." *Id.* at 454 (quoting Restatement (Third) of Agency (2006), § 4.01). Because ratification is an affirmative defense, the burden of proving it rests on the party asserting it as a defense. *Brook Valley Ltd. P'ship*, 825 N.W.2d at 789.

Importantly, because ratification is "the acceptance of a *previously unauthorized* contract," *Brook Valley Ltd. P'ship*, 825 N.W.2d at 789 (emphasis added), the Court must first examine whether the insurance policy was binding on Acceptance, despite that it was missing the Exclusions. For this question, the Court looks to the established doctrine that "if an act done by

an agent is within the apparent scope of the authority with which he has been clothed, it does not matter that it is directly contrary to the instructions of the principal. The principal will, nevertheless, be liable unless the third person with whom the agent dealt knew that he was exceeding his authority or violating his instructions." *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 392 N.W.2d 759, 765 (Neb. 1986) (quoting 3 Am. Jur. 2d *Agency* § 273 at 776–77 (1986)). It is only when "the agent exceeds the scope of his authority, and the absence of authority is known to the person dealing with him or if the third person knows or should know the limitation of the authority of the agent," that the principal will not be bound by such actions. *Rodine v. Iowa Home Mut. Cas. Co.*, 106 N.W.2d 391, 398 (Neb. 1960).

Here, all parties in this action agree that Krar was an authorized agent of Acceptance, licensed to sell insurance to companies in the state of Connecticut. There is no argument, nor any facts that would indicate, that WR Home (or, to the extent relevant, JNC) were aware of any specific limitations on this authority, including any limitations on Krar's issuance of policies that did not contain the required Exclusions. Therefore, despite that the policy at issue was issued outside the scope of Krar's agency authority, neither WR Home (nor, to the extent relevant, JNC) knew, nor should they have known, this. Under the doctrine of apparent authority, then, Acceptance was bound by the incorrectly issued policy when it was issued and, under its terms, was required to defend and indemnify JNC in the underlying litigation, despite that Krar acted contrary to Acceptance's instructions by issuing the policy without the Exclusions. It follows that, since ratification is a doctrine designed to authorize a previously unauthorized, i.e., non-binding, contract, it does not squarely apply in a situation like this, where the principal is already bound by the contract with the third party by way of the agent's apparent authority. Here, Acceptance's actions after it learned about the missing Exclusions did not affect its legal relationship with WR

Home (or, to the extent relevant, JNC) in any meaningful way, since it was already bound by the insurance policy. It simply continued to honor the contract to which its agent had bound it. Therefore, Krar's ratification argument is inapposite.[4]

This conclusion is further supported by the comments to the Restatement (Third) of Agency, which has been cited approvingly by the Nebraska Supreme Court. *See Harts v. Cnty. of Knox,* 952 N.W.2d 199, 206 (Neb. 2020). Specifically, comment b to section 4.01 notes that "*When the prior act did not otherwise affect the legal relations of the ratifier*, ratification provides the basis on which the ratifier's legal relations are affected by the act." Restatement (Third) Of Agency § 4.01 cmt. b. (2006) (emphasis added). Moreover, Black's Law Dictionary defines ratification as: "A person's binding adoption of an act already completed but either not done in a way that originally produced a legal obligation or done by a third party having at the time no authority to act as the person's agent." Ratification, Black's Law Dictionary (11th ed. 2019).

Simply put, ratification is a doctrine that comes into play only where a principal was not previously bound by the acts of its agent, and Krar does not credibly argue otherwise. In this case, Krar has never contended that Acceptance was not bound by the issuance of the incorrect insurance policy. Instead, Krar has repeatedly argued that Acceptance should have sought reformation of the policy to accurately reflect the intentions of the parties. *See, e.g.*, ECF No. 104 at 10. What Krar fails to do, however, is provide any authority for the idea that Acceptance was *required* to seek reformation under these circumstances. Of course, Acceptance had the option to file an action seeking reformation, but Krar has provided no law, and the Court has been unable to locate any, stating that Acceptance was required to do so at the risk of ratifying Krar's conduct and losing the

---

[4] Whether there has been ratification in a given scenario is "ultimately and ordinarily a question of fact." *Elting*, 849 N.W.2d at 455. Because the Court concludes that the ratification doctrine does not apply here, it need not reach the question of whether Acceptance ratified Krar's conduct.

ability to pursue reimbursement from it.  Because Acceptance was already bound by the insurance policy, it was obligated to defend and indemnify JNC in the underlying suit.  The doctrine of ratification has no place in this situation.  Therefore, this doctrine does not bar Acceptance's claims.[5]

### 2.   Voluntary Payment

Krar next argues that it should not be liable for breach of the Agency Agreement because the payment made by Acceptance was voluntary, thus excusing Krar from liability.  Before turning to the potential merits of this argument, the Court must address a few preliminary matters.  First, despite the parties agreeing that Nebraska law governs Krar's potential liability on the breach of contract claim, neither party has presented the Court with a single citation to Nebraska law on this topic.

Second, the Court believes that it is important to clarify precisely what Krar is arguing.  In this action there are two separate and distinct contracts at issue.  The first is the Agency Agreement between Acceptance and Krar that Acceptance claims Krar breached.  The second is the insurance policy, written by Krar and provided to WR Home, and, by extension, JNC, that Acceptance argues forced it to provide coverage for the underlying lawsuit.  As best the Court can discern, through its voluntary payment argument, Krar argues that because Acceptance "voluntarily" defended and indemnified JNC based on the improperly-issued insurance policy, Krar is somehow not liable for its breach of a completely separate contract where neither party has paid anyone any money, voluntarily or otherwise.

---

[5] Additionally, the Court observes that "ratification is not effective in favor of an agent against a principal when the principal ratifies to avoid a loss."  Restatement (Third) Of Agency § 4.02(2)(b) (2006).  Here, Acceptance may have faced further liability in the form of a lawsuit from JNC if it failed to comply with the terms of the binding policy incorrectly issued by Krar.  Assuming *arguendo* that Acceptance had ratified Krar's actions, such ratification may not have been effective for this reason.

Turning to the merits of this argument, it is true that under Nebraska law the general rule is "that all payments made under a contract are presumed to be voluntary, and the party seeking to recover payment has the burden to prove that it was involuntary." *Chalupa v. Hartford Fire Ins. Co.*, 350 N.W.2d 541, 544 (Neb. 1984). A payment may be rendered involuntary where the payor based its actions on a mistake of fact, duress, or fraud. *Hartford Fire Ins. Co. v. Davey*, No. A-90-494, 1992 WL 295545, at *2 (Neb. Ct. App. Oct. 20, 1992). More recently, and relevant to this action, the Supreme Court of Nebraska has restated this rule as: "normally, a plaintiff cannot recover money voluntarily paid under a claim of right to payment if the plaintiff knew of facts that would permit the plaintiff to dispute the claim and withhold payment," unless the plaintiff's payment was "imperfectly voluntary, or ineffective, for a legally recognized reason." *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 743 (Neb. 2011). Based on this law, Krar's argument fails.

First, the Court has been unable to locate a single case applying Nebraska law where the voluntary payment defense was successfully asserted by a third party who had not previously received funds directly from the plaintiff. Instead, this defense is typically employed when a plaintiff pays a defendant money and later claims the funds were either incorrectly paid, or that the defendant was overpaid. *See, e.g., Federated Mut. Ins. Co. v. Good Samaritan Hosp.*, 214 N.W.2d 493, 496 (Neb. 1974) (insurer who voluntarily, but incorrectly, overpaid hospital was not entitled to return of funds); *Hartford Fire Ins. Co.*, 1992 WL 295545, at *2 (insurer who voluntarily paid insured despite that insured had already been paid for the same incident by a separate insurer was not entitled to return of money). This is simply not the situation here. In this case, Krar is claiming that, because Acceptance paid a third party under a *different* contract, Acceptance cannot

16

recover against Krar—an argument that, as far as the Court can discern, has never been applied or adopted into the law of Nebraska.[6]

Moreover, Krar does not appear to seriously contest that Acceptance was required to defend and indemnify JNC in the underlying suit.  Thus, its settlement of that action was at least imperfectly voluntary.  *See City of Scottsbluff*, 809 N.W.2d at 743.  Krar argues that the settlement payment was voluntary because it was not imposed by a court, after a trial.  Under this logic, Krar would require an insurer in Acceptance's position to defend the insured up to and through trial, receive a verdict, and pay only the damages required by that verdict.  Only then would Krar concede that Acceptance was not a voluntary payor, such that it could seek damages in an action like this one.  Such a rule is not only impractical, but, as mentioned, finds no purchase in the law cited by Krar.  Thus, the Court will not adopt it, and Acceptance's claims are not barred by the voluntary payment doctrine.

### 3.  Damages Not Caused by Breach

This brings the Court to Krar's final argument against Acceptance's motion for summary judgment:  that the damages in the instant case were not actually caused by Krar's breach of the Agency Agreement because other provisions of the insurance policy would have required coverage, even had the Exclusions been part of the policy.  Specifically, Krar notes that the insurance policy, as issued, contains two other relevant exclusions:  (1) the "Contractual Liability Exclusion," which provides that the policy does not cover liability for bodily injury that the insured assumed as the result of a contract or agreement; and (2) the "Employer's Liability Exclusion,"

---

[6] The two cases cited by Krar in support of its motion, *Coregis Ins. Co. v. L. Offs. of Carole F. Kafrissen, P.C.*, 140 F. Supp. 2d 461, 462 (E.D. Pa. 2001) and *Mount Airy Ins. Co v. Doe L. Firm*, 668 So. 2d 534, 536 (Ala. 1995), are inapposite.  These cases applied Pennsylvania and Alabama law, respectively, and there is no indication that they have been reviewed, much less adopted, by the courts of Nebraska.  Moreover, each of these cases involved a dispute between an insurance company and its insured regarding whether the policy at issue covered the alleged incidents. The present case, on the other hand, involves the distinct question of whether an agent is liable for improperly issuing an insurance policy outside of its authority.

which states that the policy does not apply to "bodily injury to: (1) an 'employee' of the insured

arising out of and in the course of: (a) employment by the insured; or (b) performing duties related

to the conduct of the insured's business."  ECF No. 65-10 at 23.

Krar argues, however, that there is an exception to both the Contractual Liability Exclusion

and the Employer's Liability Exclusion, which requires Acceptance to provide coverage when the

agreement that assumes liability is an "insured contract."  An "insured contract" is defined as "that

part of any other contract or agreement pertaining to your business . . . under which you assume

the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person

or organization."  ECF No. 65-10 at 34.  According to Krar, the subcontract between JNC and WR

Home was an "insured contract," such that WR Home assumed the tort liability of JNC.  Krar

contends that neither of the missing Exclusions affect the insured contract exception in any manner

and, based on the facts of the underlying action, the insured contract exception provided an

additional avenue for coverage.  Thus, the argument goes, Acceptance would have been forced to

cover the underlying action notwithstanding Krar's omission of the Exclusions.

To assess this argument, the Court must determine whether, if the Exclusions had been

included in the policy, Acceptance would have been required to cover JNC.  As discussed above,

there were two missing Exclusions:  the "Action Over" Exclusion and the "Injury to Employees"

Exclusion.  Turning first to the Action Over Exclusion, had this Exclusion been included in the

policy, it would have completely replaced the Employer's Liability Exclusion.  ECF No. 65-29 at

2 (recognizing that the Employer's Liability Exclusion "is replaced by" the Action Over

Exclusion).  This supplantation is crucial, as the Action Over Exclusion does not contain an

exception that requires coverage for liability assumed in insured contracts.  ECF No. 65-29 at 2.

Thus, if the Action Over Exclusion had been included in the policy, it would have excluded

coverage for bodily injury to employees, even for injuries for which liability was assumed pursuant to an insured contract. This alone defeats Krar's argument.

Turning next to the Injury to Employees Exclusion, this exclusion further makes clear that any injuries to employees are simply not covered under this insurance policy. ECF No. 65-28. This exclusion also does not contain a carve out for injuries for which liability was assumed pursuant to insured contracts. Thus, there is no reason to believe that the insured contracts exception would apply to this Exclusion.

Under Connecticut law, which governs the interpretation of the underlying insurance policy, an insurance policy "should not be interpreted so as to render any part of it superfluous." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 870 A.2d 1048, 1062 (Conn. 2005). Based on this guiding principle, if the Exclusions had been correctly included in the policy, there would be only a single way to read the policy such that there was no superfluous or unnecessary language. This reading would be that liability assumed under an insured contract *is* covered under the policy, but only insofar as the insured contract provides for indemnification for liability to an injured non-employee. This is because both the Action Over Exclusion and the Injury to Employees Exclusion categorically prohibit coverage for any injuries to any employees. There is no language in either of the missing Exclusions that would indicate the Contractual Liability Exclusion is somehow superior to or takes precedence over the missing Exclusions. By reading the provisions such that insured contracts are covered, but only for liability to non-employees, the Court is able to give meaning to each provision while also preventing any provision from contradicting any other provision.

In sum, had Krar properly included the Exclusions in the insurance policy, JNC's potential liability to Maldonado would not have been covered by way of the insured contracts exception to

the other relevant exclusions, and no reasonable juror could find otherwise.  Thus, Krar's argument that Acceptance would have been forced to defend and indemnify JNC for injury to a WR Home employee even if the Exclusions were included is incorrect.[7]

## V.    DAMAGES

As set forth above, the Court has determined that Acceptance has established the elements of its breach of contract action, and that Krar's affirmative defenses fail.  The Court now turns to an examination of what damages Acceptance is owed.  In its motion for summary judgment, Acceptance claims it is owned damages of $1,068,434.43, which consists of the total amount expended in the underlying litigation, and includes both the settlement of one million dollars and the attorney's fees incurred in reaching that settlement.  As the law is clear that "in a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position he would have occupied if the contract had been performed, that is, to make the injured party whole," Acceptance believes it is entitled to the total amount spent on the underlying litigation.  *Vowers & Sons, Inc. v. Strasheim,* 576 N.W.2d 817, 825 (Neb. 1998)

Initially, there is no dispute that Acceptance paid one million dollars in order to settle the underlying litigation.  Def.'s L.R. 56(a)2 St. ¶ 51.  As discussed above, had Krar included the Exclusions, Acceptance would not have been forced to pay this money.  Thus, the Court agrees that Acceptance is entitled to the one million dollars they paid to settle the underlying litigation.

The Court cannot, however, grant Acceptance's request for the additional $68,434.43 in damages on the present motion, because its claim for these additional damages is entirely unsupported by the evidence in the record.  Acceptance claims it is entitled to $68,434.43 in

---

[7] Having found that Krar's arguments against liability for its failure to include the Exclusions all fail, Krar is liable to Acceptance for breach of the Agency Agreement.  The Court need not and does not specifically examine whether Krar also breached the indemnification provision of the contract as, in any event, Acceptance would not be entitled to double recovery for multiple breaches.  *See Vowers & Sons, Inc. v. Strasheim,* 576 N.W.2d 817, 825 (Neb. 1998).

attorney's fees that were spent defending, and ultimately settling, the underlying lawsuit, but it has presented no evidence demonstrating how such legal fees were accrued. Acceptance presents no legal bills or statements from the attorneys that were working on the underlying action. Acceptance fails to even present testimony or an affidavit from anyone at their company that they did, in fact, pay their attorneys any particular amount of money in the underlying action. Without *any* evidence to substantiate the amount of money paid to the attorneys in the underlying litigation, the Court cannot find that Acceptance has carried its burden to demonstrate there are no questions of material fact regarding the amount of damages to which it is entitled for attorney's fees expended in the underlying action. Thus, Acceptance's motion for summary judgment is granted in part, only as to liability and the one million dollars in damages it paid to settle the underlying action. The amount of attorney's fees it expended to get that result must be determined through trial.[8]

## VI.    MOTIONS TO SEAL

In addition to the pending motions for summary judgment, Krar has two pending motions to seal certain exhibits. ECF Nos. 70, 101.[9] Krar's motions seek to seal certain exhibits to its motion for summary judgment, certain pages of its memorandum in opposition to Acceptance's motion for summary judgment, and certain paragraphs of its Local Rule 56(a)2 statement. Krar

---

[8] Acceptance also claims entitlement to "interest, costs, and attorney's fees incurred in prosecuting this action." ECF No. 65-1 at 24. It has long been established in the United States, however, that each party to a litigation bears their own costs and fees. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001). Thus, unless some statute, rule, or other legal authority exists to permit a party to recover attorneys' fees, a prevailing party is not entitled to fees. *Id.*; *see also Int'l Chemical Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F3d 43, 47 (2d Cir. 1985) ("Under the prevailing American rule, in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award."). Acceptance has provided no support for its proposition that it is entitled to attorney's fees for the instant action, so that portion of its request is denied. Moreover, "the availability of prejudgment interest in this diversity suit is determined by state law." *Trademark Rsch. Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1993). Acceptance has failed to point to any state law that would entitle it to prejudgment interest. Thus, the Court will not order such interest here.
[9] Acceptance filed its own motion to seal in connection with its motion for summary judgment, ECF No. 66, which the Court previously granted in part. ECF No. 85.

represents that these motions were made only because Acceptance marked these documents and information confidential when producing them during discovery. Krar represents that it has no opinion regarding whether the documents should remain sealed. The Court solicited and received further information from Acceptance regarding why the documents should remain sealed. In response, Acceptance appears to concede that no documents besides Krar's Exhibit 13 require sealing. *See* ECF No. 90. As to Exhibit 13, which appears to be part of Acceptance's claims file containing internal notes with subheadings such as "Coverage," "Investigation," and "Litigation," among others, Acceptance has requested that it be allowed to redact information subject to attorney-client privilege, as well as to redact certain "reserve information." ECF No. 90, 91. In these filings, however, Acceptance has not referenced Local Rule 5(e)2, which pertains to the sealing of documents used by parties moving for or opposing an adjudication by the Court. That Rule provides that an order sealing such documents must include "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." L.R. 5(e)2. Given that Acceptance has made no argument as to how sealing Exhibit 13 would be authorized by Local Rule 5(e)2, it has not sustained its burden to establish that sealing is appropriate.

In any event, the Court rejects Acceptance's argument that the information in Exhibit 13 should be sealed because it contains attorney-client privileged information. "The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) *was intended to be and was in fact kept confidential*, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419 (emphasis added). In this case,

Acceptance has already produced the information in question to Krar.  Thus, whatever the content of the communication, it is clear that it was not kept confidential.  As the information has already been disclosed to a third party, the attorney-client privilege no longer applies to this information and there is no compelling reason for the Court to keep it under seal.

Similarly, in support of its argument that certain information is "reserve information," Acceptance cites only Connecticut case law discussing whether such information is discoverable. *See U.S. Bank Nat'l. Ass'n v. Ls. Title Ins. Corp.*, No. CV095013702, 2010 WL 1629942, at *3 (Conn. Super. Ct. Mar. 22, 2010).  In this case, the information has already been produced. Acceptance has provided no compelling reason why any of the information at issue is required to be filed under seal.  Krar's motions to seal are therefore DENIED.  The Clerk is directed to unseal ECF Nos. 71–82, 102, and 103.

## VII.    CONCLUSION

For the reasons discussed herein, Plaintiff's motion for summary judgment is GRANTED IN PART and Defendant's motion for summary judgment is DENIED.  The Court will schedule a status conference with the parties to set dates for pretrial submissions and trial, which will be limited to the issue of the amount of attorney's fees incurred by Acceptance in defending the underlying action.

**SO ORDERED** at Hartford, Connecticut, this 28th day of July, 2023.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE